Asociación de Residentes de Park Side, Inc. y otros, peticionarios, *v.* Junta de Planificación y Compañía Telefónica de Puerto Rico, recurridas.

*Número:* CC-1997-565 *Resuelto:* 7 de octubre de 1999

302

*Mario J. Pabón, Manuel Maldonado, William Vivoni* y *José Manuel De Juan*, abogados de la parte peticionaria; *Efrén B. Lugo Pérez*, abogado de la Junta de Planificación, recurrida; *Sandra E. Torres López* e *Yvonne Aguilú*, abogadas de la Compañía Telefónica de Puerto Rico, recurrida; *Juan Carlos Gómez Escarce*, de *Fiddler, González & Rodríguez*, abogado de la parte recurrida.

LA JUEZ ASOCIADA SEÑORA NAVIERA DE RODÓN emitió la opinión del Tribunal.

La Asociación de Residentes de Park Side, Inc. y otros (en adelante la Asociación) nos solicitan que revoquemos la sentencia del Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), emitida el 4 de agosto de 1997, la cual confirmó una resolución de la Junta de Planificación (en adelante la Junta) de 22 de mayo de 1996. Mediante la referida resolución, la Junta aprobó la consulta de ubicación Núm. 94-16-0718-JGU y solicitud de variación en uso, autorizando a la Telefónica de Puerto Rico (en

adelante la Telefónica) a construir un estacionamiento multipisos en un solar clasificado como residencial (R-3) y un edificio multiusos en un solar colindante en zona comercial limitada (C-2).

En el presente recurso, la Asociación cuestiona la concesión por parte de la Junta de una variación en uso para la construcción del estacionamiento multipisos. En esencia, nos toca determinar si las circunstancias del presente caso justificaban exceptuar a la Telefónica de los requisitos de zonificación que pesan sobre su terreno y que prohíben la construcción del estacionamiento multipisos. De otra parte, la Asociación alega, que el Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, ed. rev., 16 de septiembre de 1992) (en adelante Reglamento de Zonificación), no tolera los usos que la Telefónica pretende dar al edificio multiusos. Por lo tanto, debemos examinar si los usos propuestos por la Telefónica para el edificio de usos múltiples se encuentran contenidos en una zona C-2.

I

En el 1994 la Telefónica presentó ante la Junta una consulta de ubicación y solicitud de variación para la construcción de un edificio con dos (2) componentes: un estacionamiento multipisos para seiscientos cincuenta y ocho (658) vehículos y un edificio de usos múltiples. El predio objeto de consulta tiene una cabida de 1.68 cuerdas y radica en la Calle Park Side Núm. 1 de la urbanización Park Side en Pueblo Viejo, Guaynabo. Éste ubica cerca de los edificios de oficinas centrales de la Telefónica.

El terreno donde la Telefónica pretendía ubicar el proyecto está subdividido en dos (2) lotes con diferentes clasificaciones. Según el Mapa de Zonificación de Guaynabo vigente, el estacionamiento multipisos se construiría en un solar clasificado como R-3 destinado al uso residen-

cial y las facilidades multiusos en un distrito C-2 de uso comercial limitado. La solicitud de variaciones presentada se refería exclusivamente a la construcción del estacionamiento multipisos en el solar R-3, ya que la Telefónica entendía que la construcción del edificio multiusos sobre el lote de clasificación C-2 se encontraba permitida por el Reglamento de Zonificación. Cabe señalar que el edificio de estacionamiento inicialmente propuesto constaba de cuatro (4) pisos, *dos (2) de los cuales estarían soterrados.* Luego, durante el proceso de consulta, la Telefónica enmendó su memorial explicativo a los efectos de construir *los cuatro pisos* del estacionamiento *sobre* la tierra.[1]

Al percatarse de los planes de la Telefónica, el 12 de septiembre de 1994 la Asociación presentó ante la Junta una solicitud de intervención y vista pública para exponer sus puntos en cuanto al proyecto. El 21 de septiembre de 1994 la Junta denegó ambos planteamientos y a su vez aprobó la consulta ubicación del Proyecto incluyendo las variaciones solicitadas. La Asociación solicitó reconsideración a la Junta, la cual fue denegada.

Inconforme con la decisión de la Junta, la Asociación acudió primero al Tribunal Superior mediante un recurso de revisión, luego ante el Tribunal de Circuito en *certiorari* y finalmente ante nos, alegando que la variación concedida, por tratarse de una variación *en uso*, requería la celebración de vistas públicas. Este Tribunal, mediante *Asoc. Res. Park Side, Inc. v. J.P.,* 139 D.P.R. 349 (1995), determinó que *la figura aplicable al caso de autos era la de la variación en uso* y, por lo tanto, la Junta estaba obligada por sus propias reglas a celebrar vistas públicas antes de concederla. También, ordenó la paralización de la construc-

---

[1] La Junta de Calidad Ambiental (en adelante JCA), mediante carta de 15 de junio de 1994, certificó que el proyecto *original* cumplía con la Ley sobre Política Pública Ambiental. Sin embargo, el segundo Memorial Explicativo, el cual variaba significativamente el concepto e impacto ambiental del proyecto, nunca fue considerado ni aprobado por JCA. Peor aún, la oficial examinadora de la Junta de Planificación (en adelante la Junta) no permitió que se contrainterrogara a los testigos y peritos de la Telefónica de Puerto Rico (en adelante Telefónica) sobre el asunto.

ción del *edificio de estacionamiento*, la cual ya había comenzado.([2])

Así las cosas, el 27 de febrero y el 4 de marzo de 1996 la Junta celebró vistas públicas para dilucidar el asunto. A las referidas audiencias comparecieron residentes de todas las áreas circundantes, la Telefónica, representada por sus abogados, y varios peritos. Estos últimos testificaron sobre el impacto del proyecto de estacionamiento en el tránsito, ruido y contaminación ambiental de la zona. La Junta emitió una decisión el 22 de mayo de 1996 mediante la cual aprobó la construcción del proyecto de estacionamiento multipisos *según solicitado*, esto es, con todas las variaciones y con los cuatro (4) pisos sobre tierra.

Tras denegarse la reconsideración, la Asociación solicitó revisión al Tribunal de Circuito. El foro apelativo mantuvo la paralización de la construcción del estacionamiento, pero finalmente confirmó la decisión de la Junta mediante sentencia emitida el 4 de agosto de 1997.

No conforme con la decisión del Tribunal de Circuito, la Asociación acudió ante nos y atribuyó a la Junta([3]) la comisión de cinco (5) errores. A saber:

A. Erró la Junta de Planificación al conceder una variación en uso para la construcción del edificio de estacionamiento de la Telefónica, a pesar de que no existen circunstancias excepcionales que justifiquen la misma y en directa contravención a la doctrina sobre el "Daño Autoinfligido".

B. Erró la Junta de Planificación al no permitir que se contrainterrogara a testigos de la telefónica sobre temas claramente relevantes, y al permitir que durante el contrainterrogatorio limitado de algunos testigos, éstos pudieran hablar

---

([2]) Tras verificar que el fin al cual se destinaría el edificio multiusos se encontraba en armonía con el Reglamento de Zonificación, emitimos una resolución el 4 de enero de 1996 donde aclaramos que la orden de paralización sólo aplicaba al edificio de estacionamiento que se comenzaba a construir sobre el solar R-3, y no al edificio multiusos.

([3]) Entendemos que la Asociación de Residentes de Park Side, Inc. y otros, (en adelante Asociación) lo que quiso plantear ante nos fue que erró *el Tribunal de Circuito de Apelaciones* (en adelante Tribunal de Circuito) al confirmar a la Junta por las razones enumeradas.

directamente con sus abogados, violándose el derecho al debido procedimiento de ley de los residentes.

C. Las determinaciones de hecho y conclusiones de derecho de la Junta de que el edificio multiusos no afecta la situación del tránsito, el ruido y la contaminación ambiental, no están apoyadas por evidencia sustancial que surja del record administrativo.

D. Erró la Junta al determinar que los usos a los cuales se pretende destinar el edificio multiusos están permitidos en un distrito C-2.

E. Erró la Junta al concluir que el proyecto propuesto por la Telefónica cumple con el Plan de Uso de Terreno y satisface los criterios de un Desarrollo Extenso.

Por considerar que la discusión del primer y cuarto error dispone adecuadamente del presente recurso, se hace innecesario examinar los restantes señalamientos de error. Veamos.

En su primer señalamiento de error, la Asociación impugna la variación en uso que la Junta concedió a la Telefónica para construir un edificio de estacionamiento multipisos en un solar de clasificación residencial. Señala, que en el presente caso están ausentes las circunstancias de tipo excepcional que justifican eximir a un proyecto del cumplimiento con el Reglamento de Zonificación. Además, aducen que las circunstancias que la Telefónica cita como fundamento para solicitar la variación en uso, fueron creadas por la propia Telefónica y que, por ende, cualquier menoscabo al disfrute de su propiedad resultante es autoinfligido. Le asiste la razón a la Asociación.

## II

La Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 y ss., asigna a dicha agencia la responsabilidad de dirigir el desarrollo integral de Puerto Rico, de modo que "foment[e] en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bien-

estar general de los *actuales y futuros* habitantes [del país]". (Énfasis suplido.) 23 L.P.R.A. sec. 62c. La Junta adopta el Reglamento de Zonificación para guiar el uso y desarrollo de los terrenos en Puerto Rico. Mediante zonificación se establecen las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas del país.[4]

En su Sec. 98.00, el Reglamento de Zonificación, *supra*, establece la figura de la variación, la cual permite al titular de una propiedad solicitar que se le exima de las restricciones de zonificación que sujetan su propiedad. El propósito de la figura es *evitar que la aplicación literal de los requisitos de zonificación resulten en una confiscación del disfrute de la propiedad.*[5] La Junta sólo debe conferir variaciones en *circunstancias extraordinarias* y para evitar perjuicios a la propiedad, ya que debe respetarse la política pública y estrategia de desarrollo ordenado a largo plazo plasmados en el mapa de zonificación. Conceder variaciones a los requisitos de zonificación de forma laxa, destruye el objetivo de la planificación urbana. Sobre el particular señalamos en *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858, 862 (1989):

> Por la naturaleza del interés público implicado, las *variaciones* a los requisitos de zonificación *no se favorecen y deben utilizarse selectivamente* en aquellas circunstancias en que un propietario demuestre que las restricciones le causaron un *daño particular que no comparte con otros*. *"Por eso se descartará una variación cuando no haya prueba de que la situación del dueño sea singular y distinta a la de sus colindantes."* (Énfasis suplido.)

La Sec. 98.05 del Reglamento de Zonificación, *supra*, establece la figura de la variación en uso para la si-

---

[4] Véase Introducción del Reglamento de Zonificación (Reglamento de Planificación Núm. 4, Junta de Planificación de Puerto Rico, ed. rev., 16 de septiembre de 1992) (en adelante Reglamento de Zonificación).

[5] Sec. 98.02 del Reglamento de Zonificación, *supra*.

tuación en que el propietario de un terreno desea utilizarlo para fines no permitidos en la zona donde ubica. La referida sección establece la facultad de la Junta para eximir de los requisitos de zonificación *cuando existen circunstancias excepcionales y siempre que tales circunstancias no hayan sido creadas por el mismo dueño del terreno.* La Junta puede conceder variaciones en uso cuando se establezca claramente que *ninguno de los usos que están permitidos en el distrito es factible* en la propiedad desde el punto de vista físico o económico. La Sec. 98.05, *supra*, enumera, además, algunos factores que la Junta debe tomar en consideración al conceder una variación en uso.(⁶)

La Telefónica fundamenta su solicitud de variación en uso en la grave crisis de estacionamiento que aqueja toda el área de San Patricio. Señalan que el solar en cuestión siempre se ha dedicado a estacionamiento y que éste es el único uso factible para ese terreno. Alegan que el no permitirle *ampliar* el número de estacionamientos disponibles por medio de la construcción del edificio de estacionamiento multipisos equivale a una confiscación de la propiedad. Además, insisten en que las razones por las cuales ningún uso permisible es factible no fueron creadas

---

(⁶) "1. El costo de adaptar la propiedad a los usos permitidos debido a disposiciones de este u otros reglamentos y el beneficio que se derivaría una vez adaptada ésta para los usos permitidos.

"2. *Las razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser únicas a la misma y no una característica general del distrito o del sector del distrito donde ubica. No podrán haber sido causados por el dueño.*

"3. El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con los propósitos del distrito y con el vecindario o comunidad en que ubica.

"4. La variación solicitada no afecta adversamente, entre otros, los siguientes factores:

 "a. La disponibilidad de infraestructura

 "b. El contexto en el que ubica

 "c. *El ambiente de la calle*

 "d. La seguridad y tranquilidad de los vecinos

"5. El uso propuesto beneficia al vecindario.

"6. El uso para el cual se solicita la variación está permitido por las disposiciones del Tópico sobre Zonas Escolares de este Reglamento." (Énfasis suplido.)

por ellos, ya que el solar se encuentra en un *área* con deficiencias marcadas en estacionamiento. Finalmente, señalan que el edificio de estacionamiento, de por sí, no generará tránsito adicional al área. No nos convence.

En primer lugar, la Telefónica no ha podido probar que las circunstancias en que fundamenta su solicitud, a saber, la crisis en estacionamiento, son *particulares al solar en cuestión.* Por el contrario, de los propios argumentos de la Telefónica se desprende que el déficit en estacionamiento es un problema que aqueja *toda el área* donde ubica el solar, y no es una razón única a la propiedad en cuestión como requiere el Reglamento de Zonificación.

Segundo, la Telefónica no ha demostrado que ningún uso permisible por el Reglamento de Zonificación es factible. Señala la Telefónica que desde el 1966 el predio en controversia se ha utilizado como estacionamiento y que "[e]l adaptar la propiedad a usos estrictamente residenciales ciertamente requeriría un cambio en la naturaleza del quehacer de la PRTC ...". Sin embargo, omite discutir el hecho de que el Reglamento de Zonificación permite la utilización del solar R-3 como estacionamiento *abierto* y que en ningún momento la pretensión de los residentes ha sido que se deje de utilizar como tal.

 Los actos de la propia Telefónica demuestran que el uso como estacionamiento abierto del solar es totalmente factible, ya que ellos mismos lo han venido utilizando por años de este modo. Difícilmente puede sostenerse que el no poder *aumentar* el número de estacionamientos en el solar constituye una confiscación de la propiedad. El derecho a la propiedad privada no incluye el derecho de explotar al máximo sus posibilidades, pues su disfrute siempre estará condicionado a intereses sociales.

En cualquier caso, aún si se considerara que la crisis de estacionamiento en el área de San Patricio es una condición de naturaleza tan excepcional y particular al solar en

cuestión, que justifica la concesión de una variación en uso, la norma de autoinflicción de daño impide otorgar a la Telefónica la variación en uso solicitada. El problema de estacionamiento en gran medida obedece a los tres (3) edificios que albergan las operaciones de la Telefónica en el sector.(⁷) Además, hay que considerar que, *al comprar el solar en cuestión, la Telefónica estaba plenamente consciente no solo de sus necesidades de estacionamiento, sino también de las restricciones de zonificación que pesaban sobre el solar.*

■ En *Asoc. C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 334 (1985), el adquirente de una propiedad zonificada como R-3 comenzó a remodelarla para establecer en ella un dispensario médico y para ello solicitó una variación en uso. En aquella ocasión decidimos que cuando el adquirente compró la propiedad,

> *... tenía pleno conocimiento de las limitaciones de uso. Bajo estas condiciones es claro que está impedido de solicitar —y de*

---

(⁷) Los datos sobre la necesidad de estacionamiento que ofreció la Telefónica ante la Junta resultan contradictorios. Por un lado, para efectos de probar que el edificio de estacionamiento no generará tránsito adicional, los peritos de la Telefónica alegan que en la "hora peak" sólo se estacionarán trescientos (300) vehículos en el edificio y que el edificio multiusos sólo generará la necesidad de doscientos (200) aparcamientos. ¿Cuál es, entonces, la necesidad de construir un edificio en un área residencial y duplicar el número de estacionamientos?

Por otro lado, al momento de demostrar la necesidad de aumentar la cantidad de estacionamientos y probar el déficit en la zona, incluyen en el cálculo a la totalidad de empleados de la Telefónica. Para efectos del beneficio que el estacionamiento proveerá a la comunidad, arguyen que los seiscientos cincuenta y ocho (658) espacios se utilizarán en su totalidad y que esto liberará las calles de la zona de los automóviles de los empleados de la Telefónica.

Resulta evidente que el único objetivo del estacionamiento multipisos propuesto no es el de proveer estacionamiento al edificio multiusos contiguo, como representó la Telefónica en un principio. En realidad, el edificio aspira a satisfacer la necesidad de estacionamiento creada *por la totalidad de las operaciones* de la Telefónica en el área. De modo que resulta falsa la representación de que no aumentará el tránsito en las calles de la urbanización Park Side, pues el estacionamiento servirá a seiscientos cincuenta y ocho (658) empleados telefónicos que actualmente distribuyen sus automóviles en distintas áreas de estacionamiento por todo el sector de San Patricio. Cuando los solares objeto de consulta se utilizaban como estacionamiento abierto, tenían una capacidad para trescientos (300) automóviles, menos de la mitad de lo que albergará el estacionamiento propuesto. No sabemos qué capacidad de estacionamiento tiene el solar R-3 ahora que se ha construido el edificio multiusos en el solar contiguo.

*que se le conceda*— *un alivio administrativo vía variación.* En otras palabras, como correctamente señala el propio Doctor en su comparecencia para mostrar causa "no debe premiarse a aquél que se autoinfligió el perjuicio." (Énfasis suplido.) *Asoc. C.D. Octubre v. J.A.C.L.*, supra.

En *A.R.P.E. v. J.A.C.L.*, supra, un abogado trató de obtener una variación en uso para abrir una oficina en un sector residencial. Al revocar la variación concedida, señalamos:

En el caso de autos, cuando el abogado recurrido adquirió la propiedad *sabía que pertenecía a una zona residencial que colindaba con un sector comercial.* ... *Al conocer estas limitaciones, el letrado se colocó voluntariamente en una posición que le ocasionó un perjuicio irrazonable.* En estas circunstancias procede la revocación de la decisión del Foro de Instancia y de la Junta de Apelaciones. (Énfasis en el original suprimido y énfasis suplido.) *A.R.P.E. v. J.A.C.L.*, supra, pág. 866.

Al adquirir el terreno, la Telefónica sabía que no podía construir allí un edificio de estacionamiento sin variar el uso de dicho solar. Por lo tanto, ésta se puso voluntariamente en la posición de no poder ampliar las facilidades de estacionamiento. Vale aclarar que la doctrina de autoinflicción aplicaría independientemente de que la Telefónica supiera que la restricción sobre la propiedad era real o constructiva. *Fuertes, Guillermety v. A.R.Pe.*, 130 D.P.R. 971 (1992).

### III

Las disposiciones sustantivas sobre variaciones en uso se encuentran complementadas por requisitos de índole procesal establecidos en las Secs. 4.06 y 4.08 del Reglamento de Zonificación, *supra.* Aunque las referidas secciones establecen los requisitos procesales para solicitar una rezonificación, dichos requerimientos son igualmente aplicables cuando se solicita una variación en uso.

██ En lo pertinente al caso de autos, las referidas secciones exigen al proponente someter un memorial explicativo que incluya: "una descripción clara y completa del sector, su localización, características sobresalientes, importancia agrícola, histórica, escénica cultural o natural, *las razones que apoyan la solicitud del cambio de zonificación y el beneficio que derivaría el sector o comunidad con respecto al mismo*". (Énfasis suplido.)

Además, en casos como el presente donde se trata de una consulta para una *mejora pública*, la agencia proponente tiene que evidenciar mediante certificación que ha presentado la documentación correspondiente ante la Junta de Calidad Ambiental (en adelante JCA) en cumplimiento con la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. sec. 1121 y ss. En caso contrario, deberá demostrar que el proyecto está incluido en las exclusiones categóricas de dicha agencia. Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244, Junta de Planificación de Puerto Rico, 27 de diciembre de 1994.

██ Cuando la Junta ha denegado una solicitud de rezonificación y posteriormente se hace una "solicitud *similar*" en relación con el mismo terreno, el solicitante debe demostrar, *por escrito*, que han ocurrido cambios sustanciales en el área circundante al solar que ameriten que la Junta considere nuevamente la solicitud. Sec. 4.07 del Reglamento de Zonificación, *supra*. Véase *Montoto v. Lorie*, 145 D.P.R. 30 (1998). La Telefónica incumplió ambos requisitos procesales antes mencionados.

El memorial explicativo con el cual la Telefónica obtuvo el aval de la JCA era sustancialmente distinto al que sometió ante la consideración de la Junta y la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) En el memorial que la JCA tuvo ante su consideración, el estacionamiento se describía como "un edificio de cuatro pi-

sos, *dos de los cuales estarán bajo el nivel del terreno ...*".
La Telefónica señaló en este primer memorial que "[e]l *impacto del volumen del edificio hacia las zonas residenciales se minimizará con la construcción de dos pisos soterrados*"
y que "[e]n los frentes de calle *se proponen fachadas de poca altura ...*". Al enmendar el proyecto a los efectos de que los cuatro (4) pisos estuvieran sobre tierra, las circunstancias antes descritas cambiaron sustancialmente. El nuevo memorial debió someterse ante la JCA para su aprobación, pues en términos de impacto ambiental, no es lo mismo un edificio de dos (2) plantas sobre el suelo que uno de cuatro (4).

Además, en cuanto al segundo requisito, vale señalar que la Junta había negado al dueño anterior una solicitud de rezonificación para un proyecto de menor envergadura que el estacionamiento multipisos. No obstante, la Telefónica omitió este hecho en su memorial explicativo. Tampoco presentó argumento escrito alguno en relación con los cambios surgidos en la zona desde que la solicitud de rezonificación interpuesta por el dueño anterior fue denegada. La Telefónica incumplió así con el requisito de demostrar por escrito que hubo cambios sustanciales en el área que ameritan se considere nuevamente una solicitud similar. En el presente caso, la variación en uso presentada por la Telefónica, en la práctica, tendría un efecto similar al de una rezonificación, pues se estaría permitiendo no solo un uso ajeno, sino también la construcción de una estructura no contemplada para un distrito R-3.

*Lo antes expuesto no concluye la consideración del caso ante nos.*

## IV

A través de su cuarto señalamiento, la Asociación argumenta que la Junta erró al determinar que los usos a los cuales se pretende destinar el edificio multiusos están per-

mitidos en un distrito C-2. No les asiste la razón, pues en *Asoc. Res. Park Side, Inc. v. J.P.*, supra, este aspecto de la controversia ya fue decidido por este Tribunal. Sin embargo, en comparecencias posteriores a la referida decisión, la Telefónica ha pretendido conseguir el aval de este Tribunal para dedicar el edificio multiusos a fines distintos a los que consideró tanto la Junta durante la consulta de ubicación, como A.R.Pe. al otorgar permiso de construcción y también este Tribunal en *Asoc. Res. Park Side, Inc. v. J.P.*, supra. Por ello es menester que clarifiquemos nuestra posición sobre el asunto. Veamos.

En la resolución que emitimos el 20 de diciembre de 1995, ordenamos a la Junta que se expresara sobre "si el fin al cual [el edificio multiusos] está destinado está en armonía con la zonificación C-2". Por lo tanto, al prestar posterior aval a que se continuara la construcción del edificio multiusos sobre el predio C-2, determinamos que *los usos propuestos entonces* por la Telefónica, ante la Junta de Planificación y ante este Tribunal, estaban permitidos por el Reglamento de Zonificación.

Sin embargo, mediante una moción en auxilio de jurisdicción posterior, la Telefónica acude ante nos solicitando permitamos el uso del edificio para *"oficinas"*. Este uso no estuvo contemplado en el memorial explicativo presentado ante la Junta[8] ni ante A.R.Pe., por lo tanto, mediante Resolución de 27 de abril de 1998, no autorizamos tal uso. Luego, el 3 de mayo de 1999, la Telefónica recurrió nuevamente ante nos, por medio de moción en auxilio de jurisdicción, solicitando que se permitiera el uso del edificio, entre otros usos, para oficinas de apoyo a los servicios que se proveerían a los empleados *y oficinas para "otros servicios propios de las comunicaciones"*. (Énfasis suplido y en el original.)

---

[8] La Telefónica en su memorial explicativo enmendado describe la parte que ha de construirse en el solar C-2 como un salón de usos múltiples, oficina de orientación, gimnasio y enfermería para los empleados de dicha corporación.

Parece evidente que la Telefónica pretende conseguir el aval de este Tribunal para dedicar el edificio multiusos a usos distintos de aquellos incluidos tanto en los memoriales explicativos ante las agencias reglamentadoras como en las representaciones hechas ante este Tribunal. Estas representaciones nos llevaron a autorizar la construcción del edificio multiusos en el solar C-2. Mediante resolución emitida el 27 de abril de 1998, procedimos a prohibir la utilización del edificio multiusos ya construido con el objeto de examinar si los nuevos usos propuestos estaban permitidos por el Reglamento de Zonificación. Igualmente nos preocupó que al utilizar el edificio multiusos como oficinas fuera a aumentar la necesidad de estacionamiento generada por este edificio y que ello pudiera utilizarse para justificar la construcción del estacionamiento contiguo.

La Sec. 22.02 del Reglamento de Zonificación, *supra*, enumera los usos permisibles en un distrito C-2. Al examinar la referida sección encontramos que el Reglamento de Zonificación permite que se ubique una "Oficina" en un distrito C-2.[9] Sin embargo, este uso no fue incluido en el memorial que se presentó a la Junta durante la consulta de ubicación y ante A.R.Pe. para la aprobación del permiso de construcción. Debemos recordar que parte del argumento ante la Junta para conseguir la aprobación fue que el edificio multiusos no generaría tránsito adicional a las calles de urbanización Park Side, pues era para el *uso exclusivo de empleados* de la Telefónica.

En Puerto Rico, tanto el Reglamento de Zonificación como el Reglamento de A.R.Pe., exigen la obtención de un permiso de uso *para ocupar o usar cualquier*

---

[9] Los distritos comerciales de baja intensidad se crean para proteger a las áreas residenciales afectadas por el crecimiento de las operaciones comerciales. Ello, unido al hecho de que el Reglamento de Zonificación disponga que se permite el uso como "oficina", en singular, hace necesario que A.R.Pe., utilizando su conocimiento especializado, determine si pueden ubicarse en el edificio multiusos el número y tipo específico de oficinas propuestas por la Telefónica.

*propiedad.*([10]) Esto, independientemente de que se trate de edificaciones que conlleven construcción o de estructuras previamente existentes. Además, la reglamentación vigente obliga a solicitar nuevos permisos de uso cuando deseen hacerse cambios en el uso de un edificio o cuando pretenda utilizarse la estructura para usos que no fueron debidamente identificados al obtener el permiso de construcción. En el caso ante nos, la Telefónica solicita permiso para usar el edificio multiusos para oficinas para "otros servicios propios de las comunicaciones" (énfasis suprimido), por primera vez, ante este Foro. Dicha determinación corresponde a A.R.Pe.

La estructura multiusos construida puede utilizarse para aquellos usos que han sido aprobados tanto por la Junta como por A.R.Pe. Sin embargo, para ubicar otro tipo de "oficinas" en el edificio, deben obtener el correspondiente permiso de uso de A.R.Pe. Es esta agencia la que tiene la pericia para decidir si los usos específicos que se le darán a las oficinas, así como la intensidad de dichos usos, son cónsonos con una zona comercial de baja intensidad cuyo propósito es servir de área de transición entre las áreas residenciales y otros distritos comerciales.([11]) En cualquier caso, de A.R.Pe. aprobar el uso como oficinas, la Telefónica no debe utilizar esta autorización para justificar la necesidad adicional de estacionamiento.

En conformidad con los fundamentos antes expuestos,

---

([10]) La Sec. 3.02 del Reglamento de Zonificación, *supra*, dispone:

"3.02 —Requerimiento de Permisos— A partir de la fecha de vigencia de este Reglamento se requerirá por la Administración de Reglamentos y Permisos de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos; o un permiso de construcción para toda construcción, reconstrucción ...."

Por otra parte, el Reglamento de Edificación (Reglamento de Planificación Núm. 7, 10 de julio de 1968), en su Art. I-C-1.0, dispone:

"2. Los edificios que en adelante se construyeren, ampliaren, reconstruyeren, o modificaren, en todo o en parte, *no podrán usarse u ocuparse hasta tanto se expida o acredite con Permisos de Uso o Certificados de Construcción el uso que puede darse y las condiciones en que pueden usarse dichos edificios en sus diversas partes*, haciendo constar que los mismos y el uso a que se destinan están de acuerdo con las disposiciones de este Reglamento.

([11]) Introducción del Reglamento de Zonificación, *supra*.

se dictará sentencia mediante la cual se revoque la variación en uso concedida a la Telefónica por la Junta de Planificación para la construcción del edificio de estacionamiento multipisos en el solar clasificado como R-3. Por otra parte, se permite la utilización del edificio multiusos para aquellos usos anteriormente avalados por la Junta. Ello, hasta tanto la Telefónica obtenga el permiso de uso correspondiente de A.R.Pe. para utilizar el edificio para fines adicionales.

Por los fundamentos antes expuestos, *se revoca la sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional de Bayamón.*

El Juez Asociado Señor Corrada Del Río disintió por entender que el dictamen del Tribunal de Circuito de Apelaciones es sustancialmente correcto y debe ser confirmado. El Juez Asociado Señor Rebollo López disintió sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió.