# 2007 DTA 83

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN**

CYNTHIA VÉLEZ Y JOSÉ MIGUEL BRANDI
Recurrentes

v.

ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, CENTRO DE SERVICIOS DE SAN JUAN
Recurrida

PROVIDENCIA REYES
Concesionaria del Permiso

ASOCIACIÓN DE RESIDENTES URB. MUÑOZ RIVERA, INC.
Interventora-Recurrente

Núm. KLRA-2006-00460

San Juan, Puerto Rico, a 20 de junio de 2007

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
el Juez López Feliciano y la Juez García García

García García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Cynthia Vélez, José M. Bradi y la interventora, Asociación de Residentes de la Urb. Muñoz Rivera, Inc. (en adelante los recurrentes), comparecen ante nos para solicitarnos la revisión de la Resolución emitida por la Junta de Apelaciones Sobre Construcciones y Lotificaciones (en adelante la JACL) el 9 de febrero de 2006, en la que confirmó la autorización otorgada por la Administración de Reglamentos y Permisos (en adelante la ARPE) a las variaciones solicitadas por la Sra. Providencia Reyes (en adelante la parte concesionaria).

Posteriormente compareció la parte concesionaria mediante su alegato en oposición al recurso de revisión de epígrafe.

En vista de la complejidad de la controversia ante nuestra consideración, mediante Resolución del 3 de noviembre de 2006, le requerimos a la ARPE que elevara los expedientes de las solicitudes de permiso presentadas por la parte concesionaria.

Contando con el beneficio de la comparecencia de las partes, con los expedientes originales y con el derecho y la jurisprudencia aplicable, estamos en posición de resolver.

### I

El 15 de septiembre de 1992, la parte concesionaria, por primera vez, sometió a la ARPE una *Solicitud de Permiso de Construcción* (92-16-E-486-SPC), el cual fue aprobado el 26 de octubre de 1992. Seguido, el 4 de diciembre de 1992, la ARPE aprobó la solicitud de permiso de uso.

Al año siguiente, en diciembre de 1993, la vecina de la Sra. Providencia Reyes, la Sra. Cynthia Vélez, presentó la Querella 93-16-G-653-SPQ a los fines de solicitarle a la ARPE que revisara la construcción de los apartamentos de la propiedad en controversia. El 18 de febrero de 1994, esta agencia informó a la recurrente el inicio de una investigación de su querella. Para esa misma fecha, la ARPE informó al hijo de la parte concesionaria las aparentes violaciones encontradas en una inspección que fue realizada.

Posteriormente, la ARPE le comunicó a la parte concesionaria las violaciones cometidas como parte de una construcción en el patio y verja, la operación de apartamentos en el primer piso de la propiedad sin el permiso correspondiente y el cierre de la marquesina. Se le indicó que para legalizar o confirmar las obras, debería conformar la propiedad a la reglamentación vigente.

Surge del expediente que entre el 1994 y 1995 se cursaron varios memorandos entre funcionarios de la ARPE para informar sobre el permiso expedido a la parte concesionaria, el cual se refería únicamente a la construcción de la segunda planta y no al patio y sobre la inspección que se realizó a la propiedad. En ese período, también, se preparó un Informe de Inspección Sobre Querellas, en el que se indicó que se observó la operación de un apartamento, y en otra sección de la propiedad, una oficina de ingeniería sin el permiso correspondiente.

En mayo de 1995, la ARPE radicó un caso ante el Tribunal de Distrito de Guaynabo. Ésta le solicitó a dicho tribunal que paralizara el uso de un apartamento ubicado en la propiedad de la parte concesionaria como oficina de ingeniería sin el permiso correspondiente. La Juez Vilma Nieves Rodríguez del Tribunal de Distrito de Guaynabo emitió una *Orden de Paralización Permanente* en el caso CD 95-647 (Sobre Querella 93-16-G-653 SPQ), en la que declaró ha lugar la petición de la ARPE sobre la oficina de ingeniería. Cabe destacar que, durante el transcurso del pleito, el inquilino de la parte concesionaria presentó *Solicitud de Permiso de Uso* para

una oficina de ingeniería en la propiedad en controversia.

Días después, continuando con la querella ante la consideración de la ARPE, esta agencia envió un comunicado a la Sra. Cynthia Vélez informándole de su decisión de revocar el permiso de uso domiciliario #95-16-C-980-SPU. Posteriormente, el 21 de julio de 1995, la ARPE le envió a ésta copia certificada del Informe Sobre Acuerdo Adoptado por el Director de la Oficina Regional de San Juan que indicaba que aun cuando se aprobó inicialmente la construcción de la segunda planta en la propiedad de la parte concesionaria, un error de un organismo administrativo no obligaba a ésta ni impedía su corrección. Considerando las múltiples violaciones a la reglamentación vigente, se revocó el permiso de uso para la residencia y la oficina bajo el número #95-16-C-980-SPU. Como parte de la revocación de este permiso, la parte concesionaria fue orientada por la agencia sobre las violaciones de las estructuras construidas en su propiedad.

En enero de 1996 se desestimó el caso ante el Tribunal de Distrito de Guaynabo, en vista de que luego de emitida la Orden de Paralización Permanente, la violación fue eliminada. Al año siguiente, el 30 de enero 1997, la JACL emitió Resolución en el caso #96-031-AC sobre el permiso #95-16-E-458-SPA, en la que confirmó la revocación de la ARPE.

En marzo de 1997, la JACL emitió otra Resolución, en la que indicó que la construcción realizada por la parte concesionaria era en exceso de lo aprobado en el permiso que fue originalmente concedido. Se indicó que la propiedad era utilizada más allá de la densidad requerida sin que se justificara el exceso. Por ello, se confirmó la decisión de la ARPE.

A mediados del año 1998, se informó a la Oficina de Asesoramiento Legal de la ARPE la realización de otra inspección a la propiedad en abril del mismo año. Surgía del informe realizado por los inspectores que se construyó una terraza de madera de unos 13'-0" x 30'-0" sobre el área de la marquesina; además, se construyó una terraza de madera de 14'-0" x 23'-0" en la parte posterior; que la propiedad no cumplía con el patio delantero, no proveía patios laterales debido a las ampliaciones en la estructura y que invadía el patio posterior por el cual pasaban unas líneas de electricidad.

También, en el 1998 la parte concesionaria presentó ante la ARPE una *Consulta Sobre Conformidad con el Reglamento de Zonificación* (#B-98-16-D-496-SPA).

En febrero de 1999 se re-inspeccionó la propiedad en controversia y se determinó que aún continuaba operando y exhibiendo las mismas violaciones. Un año después, el 30 de octubre de 2000, el Ing. Eduardo Oliver Polanco, en representación de la parte concesionaria, presentó nuevamente una *Solicitud de Variación o Excepción a Disposiciones Reglamentarias*. La variación solicitada consistía en patios y en el área de ocupación. Ello, porque alegadamente no se afectaría la infraestructura, el ambiente de la calle ni la tranquilidad de los vecinos.

En noviembre del mismo año, el Ing. Eduardo Oliver Polanco presentó otra *Solicitud para Aprobación de Desarrollo de Terrenos* para solicitar la aprobación de: (1) una variación en cuanto a la distancia del edificio accesorio a la residencia principal, (2) una variación de patios y área de ocupación, y (3) una variación en la ubicación de la verja sobre el techo de la marquesina que fue construida en la colindancia (Caso #00AX1-00000-08087). En la misma fecha, dicho ingeniero, también presentó una *Solicitud de Servicios* en relación al proyecto de la segunda planta.

En diciembre de 2000, la ARPE le comunicó al Ing. Eduardo Oliver Polanco el *Informe Sobre Acuerdo Adoptado por el Director del Centro de Servicios de San Juan*, en el que se recomendó denegar el anteproyecto por disconformidad con la reglamentación vigente. Se indicó que las variaciones eran excesivas.

En enero de 2001, el Ing. Eduardo Oliver Polanco envió carta a la a la ARPE, Centro de Servicios de San Juan, para aclarar unos alegados errores en cuanto a las medidas de la estructura y para proponer relocalizar la verja de la terraza del segundo nivel a 5'-0" de la colindancia en aras de cumplir con la reglamentación vigente. Esta carta fue acogida como una solicitud de reconsideración. Seguido, el 15 de febrero de 2001, la ARPE emitió *Orden* declarando no ha lugar la referida reconsideración.

Inconforme, en marzo del mismo año, el Ing. Eduardo Oliver Polanco, en representación de la parte concesionaria, procedió a presentar ante la JACL un *Escrito de Apelación*. En éste describió el proyecto como una marquesina que fue cerrada y convertida en sala y un dormitorio, el techo de la marquesina era utilizado como terraza y, además, contenía un edificio accesorio que colinda con la vivienda principal. Fundamentó su apelación en que ningún vecino se veía afectado y que las mejoras realizadas eran el comportamiento típico del sector. Al mismo tiempo, acudió nuevamente ante la Oficina de Permisos Urbanísticos del Municipio de Guaynabo para solicitar la aprobación de variaciones para el área del patio.

El 10 de julio de 2001, la JACL acordó desestimar el recurso por falta de jurisdicción. Entendió que aun cuando se había emitido una orden que declaraba no ha lugar la reconsideración, la ARPE nunca dictaminó que iba a considerarla. Por tanto, concluyeron que el escrito de apelación fue presentado pasados los treinta días establecidos para apelar.

Nuevamente, en noviembre de 2001, el Ing. Eduardo Oliver, en representación de la parte concesionaria, solicitó ante la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo la legalización de la construcción de la segunda planta y de los dos apartamentos.

Concurrentemente se tramitaba el pleito *Marta Arroyo, Etc. v. Providencia Reyes Fuentes*, DPE-2000-0005 (404), en el Tribunal de Primera Instancia, Sala Superior de Bayamón, que también versaba sobre la construcción en la propiedad de la parte concesionaria. El 19 de diciembre de 2001, dicho tribunal emitió una *Orden,* en la que requirió a la parte concesionaria, sus empleados, causahabientes, mandatarios y representantes que cesaran el uso de los apartamentos que se operaban ilegalmente en su propiedad.

En relación al permiso solicitado ante la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo, en marzo de 2002, ésta emitió una *Resolución* denegando el anteproyecto presentado por el Ing. Eduardo Oliver Polanco para la aprobación de los permisos de la propiedad de la parte concesionaria. Se indicó que las variaciones solicitadas eran de tal magnitud que se excederían los parámetros razonables y se afectaría la convivencia de la comunidad en general.

En atención a la reconsideración presentada por el Ing. Eduardo Oliver Polanco, el 9 de abril de 2002, la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo emitió *Resolución Sobre Reconsideración* para declarar la referida petición no ha lugar. Concluyó que en la solicitud no se indicaron los cambios que proponían realizar en la estructura.

Poco tiempo después, en mayo del mismo año, el Ing. Eduardo Oliver Polanco presentó una vez más, una solicitud de reconsideración ante la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo. Dicha solicitud no pudo ser atendida, ya que la reglamentación vigente únicamente autorizaba al municipio a atender una sola reconsideración.

Sin darse por vencido, el 21 de junio de 2002, el Ing. Eduardo Oliver, en representación de la parte concesionaria, presentó una nueva consulta ante la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo, en la que propuso demoler la ampliación ilegal de invasión hacia el patio lateral derecho para que fuera utilizado como marquesina. Dos meses después, dicha oficina emitió una *Resolución* para indicar que la facultad de tomar decisiones sobre varios tipos de variaciones correspondía a la ARPE.

En octubre de 2002, el Ing. Eduardo Oliver, en representación de la parte concesionaria, presentó una nueva *Consulta de Conformidad con el Reglamento de Zonificación* ante la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo. Solicitó variación en el patio delantero para localizar la escalera que da acceso a la segunda planta, variación en el patio izquierdo para un pasillo hacia los apartamentos del segundo nivel y variación en la densidad poblacional por unidad básica de vivienda (Caso #02-AX1-00000-06955). La Oficina de Permisos Urbanísticos decidió elevar a la ARPE los expedientes de la solicitud de variaciones para su aprobación. Ese mismo día, el Ing. Eduardo Oliver también presentó una *Solicitud de Servicios.*

Consta en el expediente un memorando del 13 de febrero de 2003 de un inspector de la ARPE, informando otra inspección realizada a la propiedad. Se indicó en éste que la estructura seguía igual, pero que sólo estaba habitado uno de los apartamentos de la propiedad. Se señalaron como violaciones: la ampliación de la primera planta hacia el área del patio lateral derecho; construcción de terraza de material combustible al nivel de la segunda planta, de unos 13' x 30"; construcción de terraza de material combustible hacia el patio posterior al nivel de la segunda planta de unos 23' x 14" y construcción de un edificio accesorio unido al edificio principal que invadía parte del patio posterior y parte del patio lateral izquierdo, de unos 18' x 11".

En marzo de 2003, la ARPE notificó la celebración de una vista administrativa el 30 de abril del mismo año. Días antes de la vista, el 25 de abril, el Municipio Autónomo de Guaynabo presentó ante la ARPE una *Moción de Desestimación*, en la que expuso su oposición a la consulta sobre conformidad para la construcción de una segunda planta para dos apartamentos propuesta por la parte concesionaria. Señaló el municipio que esta solicitud de permisos se había ventilado por la proponente en múltiples ocasiones y en múltiples foros, entiéndase la ARPE, la JACL y el TPI. En todos y cada uno de ellos se le había denegado la aprobación del permiso solicitado. Por tanto, era de aplicación al caso la doctrina de cosa juzgada.

El 11 de julio de 2003, la ARPE emitió el *Informe Sobre Acuerdo Adoptado por el Gerente del Centro de Servicios de San Juan*, autorizando el anteproyecto propuesto. Dicha Resolución indica que el distrito donde se ubica la propiedad (R-3) es uno eminentemente residencial que permite casas de apartamientos y estructuras de dos niveles, estructura que caracteriza la propiedad de la parte concesionaria. Señala, además, que aun cuando no cumplía con la distancia del patio lateral, surge de la mitad de las residencias en la misma calle donde ubica la propiedad en controversia, que no guardan las distancias requeridas en sus patios. El Oficial Examinador recomendó que se concediera el permiso siempre y cuando se abriera la marquesina.

Oportunamente, el 30 de julio de 2003, la Sra. Cynthia Vélez presentó *Moción de Reconsideración* ante la ARPE. Dentro del término establecido en ley, el Centro de Servicios de San Juan notificó que había acogido la reconsideración presentada.

En septiembre de 2003, la Sra. Cynthia Vélez presentó *Apelación* ante la JACL. Por su parte, en diciembre de 2004, la Asociación de Residentes Urb. Muñoz Rivera, Inc. presentó *Moción Solicitando Intervención* en el caso. Un año después, el 28 de septiembre de 2005, se celebró Vista Pública para discutir las diversas posiciones en torno a la solicitud en controversia. Seguido, la Sra. Cynthia Vélez presentó *Moción de Reconsideración a los Efectos de que se Admitan en Evidencia los Documentos Ofrecidos en la Vista Celebrada el Pasado 28 de Septiembre de 2005 por la Parte Apelante y que no Fueron Admitidos por la Oficial Examinadora o, en su Defecto, para que se Admitan los Mismos como Evidencia Ofrecida y no Admitida.* Además de solicitar la admisión de la prueba ofrecida pasado su turno de exposición en la vista, indicó en su solicitud la aplicación de la doctrina de cosa juzgada e impedimento colateral e hizo mención de la norma sobre auto inflicción de daños.

El 27 de octubre de 2005, la JACL declaró no ha lugar la solicitud de la Sra. Cynthia Vélez. En noviembre, la parte concesionaria presentó *Moción Solicitando Eliminación del Expediente de Documentos del Caso Sometidos Después de Celebrada la Vista.* Expuso que aun cuando se declaró no ha lugar la solicitud de

reconsideración, todos los documentos que incluyó deberían ser eliminados del expediente. También, en la misma fecha se presentó ante la JACL un *Informe Sobre Conferencia entre Abogados* preparado el 16 de marzo de 2005.

Finalmente, el 9 de febrero de 2006, la JACL emitió *Resolución,* en la que resumió los testimonios vertidos en la vista pública y confirmó la decisión de la ARPE entendiendo que la recurrente no consiguió derrotar la presunción de corrección. Inconforme, la recurrente presentó *Moción de Reconsideración a Resolución de la J. A.C.L. del 9 de febrero de 2006* e invocó su derecho a presentar evidencia. El 3 de marzo de 2006, la reconsideración fue acogida. El 30 de marzo de 2006, la parte concesionaria se opuso a la reconsideración por considerar que no debía permitirse traer prueba a destiempo.

No habiéndose resuelto la solicitud de reconsideración dentro del término concedido a las agencias administrativas en la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2165, los recurrentes acuden ante nos para plantearnos que la JACL:

*"PRIMERO: ERRÓ AL PERMITIR EL USO DE VARIACIONES CUANDO ELLO SOCAVA LA POLÍTICA PÚBLICA DE DESARROLLO ORDENADO LATENTE EN LA LEGISLACIÓN DE PLANIFICACIÓN.*

*SEGUNDO: ERRÓ AL NO APLICAR LA NORMA SOBRE AUTOINFLICCIÓN DEL DAÑO QUE IMPIDE OTORGAR LAS PRETENDIDAS VARIACIONES.*

*TERCERO: ERRÓ CUANDO IGNORANDO EL CONTENIDO DEL INFORME SOBRE CONFERENCIA PRELIMINAR ENTRE ABOGADOS EXCLUYÓ INDEBIDAMENTE LA PRUEBA OFRECIDA Y NO ADMITIDA QUE IBA DIRIGIDA A PESAR QUE SE ESTÁ ANTE UN CASO DE COSA JUZGADA O IMPEDIMENTO COLATERAL Y QUE EXISTEN CONDICIONES RESTRICTIVAS POR VIRTUD DE UNA SERVIDUMBRE EN EQUIDAD QUE GRAVA LA URBANIZACIÓN MÚÑOZ RIVERA.*

*CUARTO: ERRÓ AL NO TOMAR EN CONSIDERACIÓN LA SECCIÓN 2.10 DEL REGLAMENTO DE ORDENACIÓN TERRITORIAL NÚM. 4 DEL MUNICIPIO AUTÓNOMO DE GUAYNABO QUE PROHIBE LA CONCESIÓN DE VARIACIONES CUANDO LA URBANIZACIÓN ESTÁ PROTEGIDA POR CLÁUSULAS RESTRICTIVAS DEBIDAMENTE INSCRITAS EN EL REGISTRO DE LA PROPIEDAD.*

*QUINTO: ERRÓ AL NO ACEPTAR EL INFORME DEL OMBUDSMAN , YA QUE EL MISMO CUBRE EL PERIODO COMPRENDIDO EL 1RO. DE ENERO DE 1994 AL 30 DE SEPTIEMBRE DE 1996.*

*SEXTO: ERRÓ AL NO ORDENAR UNA VISTA OCULAR EN EL LUGAR DE LA OBRA."*

Los recurrentes señalan en su recurso que no se debió autorizar las variaciones solicitadas por la parte concesionaria, ya que las variaciones no se favorecen y su aprobación indiscriminada socava la política pública de desarrollo establecida en nuestro ordenamiento. Además, destacan la aplicabilidad de la norma de autoinflicción de daños a la situación de autos, específicamente por el hecho de que es la parte concesionaria quien alegadamente ha querido disfrutar de su propiedad más allá de lo autorizado por ley.

Asimismo, indican la existencia de unas servidumbres que gravan la propiedad. Y, por último, plantean los recurrentes que ante las múltiples ocasiones en que se negó la aprobación de las variaciones solicitadas por la parte concesionaria, es de aplicación la doctrina de cosa juzgada e impedimento colateral.

En contraposición, arguye la parte concesionaria que la autorización concedida por la ARPE y confirmada por la JACL se refiere a un anteproyecto distinto a los anteriormente denegados, por lo que no es de aplicación

ninguna de las doctrinas antes señaladas. La parte concesionaria aceptó la construcción de obras no autorizadas. No obstante, con la solicitud de variaciones en controversia, expuso su disposición a la apertura de la marquesina y a convertir los apartamentos de la segunda planta en sólo dos (2) apartamentos de un (1) dormitorio.

Señala que la ARPE, dentro de su facultad, aquilató rigurosamente la prueba que fuera presentada en relación al permiso solicitado y basado en los cambios propuestos, finalmente, determinó, primeramente, que el distrito donde ubica la propiedad *"es uno eminentemente residencial donde permite casas de apartamentos y estructuras de dos niveles, elementos que caracterizan la estructura que se pretende legalizar"*. Además, que:

*"En el anteproyecto se propone una distancia mucho menor, lo que de su faz colocan a la propiedad en violación a las disposiciones reglamentarias aplicables. De la prueba presentada por la proponente, surge que más de la mitad de las residencias en la calle donde ubica la que está en controversia, incluyendo a la de la opositora, no guardan las distancias requeridas en dichos patios, por lo que si tomamos como base de este comportamiento, ello nos lleva a autorizar la variación solicitada. Ésta sólo lo que desea es legalizar las presuntas violaciones imputadas por la opositora.*

***El Oficial Examinador que presidió [sic] la vista recomendó autorizar el [sic] Anteproyecto condicionado a que la parte proponente cumpla con su intención de eliminar la pared que encierra la marquesina para que ésta vuelva a ser utilizada para el propósito por la cual fue concebida."*** (Énfasis suplido).

Expuesta la posición de las partes comparecientes, procedemos a discutir el derecho y jurisprudencia aplicable al caso de autos.

## II

### A. Revisión Administrativa

La función principal de la revisión judicial de las determinaciones de las agencias con poderes adjudicativos es asegurarse que las agencias actúen dentro del marco de los preceptos constitucionales. *López Echevarría v. Administración,* Opinión del 30 de agosto de 2006, **2006 J.T.S. 146;** *Assoc. Ins. Agencias, Inc. v. Com. Seg. P. R.,* 144 D.P.R. 425 (1997).

La Sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175, establece respecto al alcance de la revisión judicial de una decisión administrativa, que un tribunal sostendrá las determinaciones de hechos de una agencia si se basan en evidencia sustancial que obra en el expediente administrativo. Respecto a las conclusiones de derecho, según dispone la referida sección, podrán ser revisables en todos sus aspectos.

La norma de evidencia sustancial *"persigue evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor"*. *López Echevarría v. Administración, supra; Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997). Según establecido por el Tribunal Supremo, esta norma impone a los tribunales apelativos *"la obligación de examinar la totalidad de la prueba sometida a la agencia según consta en el expediente administrativo"*. *López Echevarría v. Administración, supra; Assoc. Ins. Agencias, Inc. v. Com. Seg. P.R., supra.*

No puede perderse de perspectiva que las determinaciones de hechos de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección, por lo que deberán ser respetadas mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. *Empresas Toledo v. Junta de Apelación de Revisión de Subasta,* Opinión del 31 de agosto de 2006, **2006 J.T.S. 147.**

Subyace a esta actitud deferencial, el respeto por nuestro sistema constitucional de separación de poderes y el reconocimiento de que las agencias ejecutivas poseen conocimientos y experiencias especializados sobre los asuntos que les han sido delegados. *Vélez Rodríguez v. ARPE*, Opinión del 21 de abril de 2006, **2006 J.T.S. 78**; *Rivera Concepción v. ARPE*, 152 D.P.R. 116 (2000); *Misión Industrial v. JCA*, 145 D.P.R. 908 (1998). Esta norma de otorgar gran deferencia y respeto a las interpretaciones de organismos administrativos especializados cobra más importancia cuando se revisan las determinaciones de aquellos organismos que tienen a cargo la reglamentación de complejos procesos técnicos, sociales o económicos. *López Echevarría v. Administración, supra; Assoc. Ins. Agencias, Inc. v. Com. Seg. P.R., supra; South P.R: Sugar Co. v. Junta*, 82 D.P.R. 847 (1961).

Ahora bien, la deferencia judicial concedida a las determinaciones de las agencias administrativas cederá cuando el foro administrativo haya cometido error en la aplicación de la ley o cuando la agencia haya actuado arbitraria, ilegalmente o en abuso de su discreción. *Marina Costa Azul v. Comisión*, Opinión del 27 de abril de 2007, **2007 J.T.S. 83**; *Otero v. Toyota*, Opinión del 3 de febrero de 2005, **2005 J.T.S. 13**; *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998); *Castillo v. Departamento del Trabajo*, 152 D.P.R. 91 (2000); *Reyes Salcedo v. Policía de P.R., supra*.

## III

### A. ARPE

La Ley Num. 76 del 24 de junio de 1975, 23 L.P.R.A. § 71, *et seq*, creó a la ARPE, cuerpo que inmediatamente pasó a ser el brazo operacional de la Junta de Planificación, al estar encargada de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación, y de los propios reglamentos que a tales fines se adopten. 23 L.P.R.A. § 71d; *ARPE v. Rivera Morales*, Opinión del 8 de mayo de 2003, **2003 J.T.S. 75**. Las determinaciones que la ARPE tome a base de las delegaciones que le han sido autorizadas, deberán ser consistentes con las políticas, normas y reglamentos adoptados por la Junta de Planificación. 23 L.P.R.A. § 62 (j)(19)(b).

Respecto a la adjudicación de solicitudes de permisos ante la ARPE, la Sección 3.02 del Reglamento Núm. 6435 del 16 de abril de 2002 (en adelante Reglamento Núm. 6435) dispone que una solicitud para la autorización de desarrollo de terrenos, notificación, anteproyecto, permiso de construcción y permiso de uso de un inmueble o pertenencia podrá ser presentada por el dueño o proyectista o su representante autorizado en caso de proyectos privados y por el jefe de agencia, o su representante autorizado en caso de proyectos públicos.

Por su parte, la Sección 7.00 del referido reglamento establece específicamente el procedimiento para la adjudicación de autorizaciones y permisos. Indica que cuando el funcionario que reciba la solicitud determine que está completa e incluye los documentos necesarios, se procederá a su evaluación. En caso de que se notifique una omisión en la información o en los documentos, el promovente de la solicitud podrá objetar dicha notificación de deficiencia en conformidad con el Reglamento Núm. 6435.

Cada proyecto será evaluado en todos los aspectos e información que obre en el expediente. En caso de que se determine que la solicitud incumple con algunos de los requisitos para su presentación, ésta podrá ser objetada en conformidad con lo dispuesto en la Sección 10.00 del Reglamento Núm. 6435.

Según la Sección 16.00, el Administrador o el Gerente del Centro de Servicios, cuando le fuere delegado, podrá otorgar variaciones y excepciones a los requisitos de los reglamentos conforme a la Ley Núm. 76 del 24 de junio de 1975, según enmendada, y demás leyes y reglamentación. Una variación es una autorización que se concede para la construcción o ubicación de una estructura, o parte de ésta, que no satisfaga los Reglamentos y Planes de Ordenación establecidos, pero que debido a la condición del solar, la ubicación especial o el uso particular, confronte una dificultad práctica y amerite una consideración especial, garantizándole que no exista

135

perjuicio a las propiedades vecinas. La variación no podrá afectar las características propias de un distrito, ni podrá tener el efecto de convertir el distrito en otro.

Las variaciones pueden solicitarse a la luz del Reglamento de Zonificación. El actual Reglamento de Zonificación, Reglamento Núm. 6211, fue aprobado el 5 de noviembre de 2000 para anular el Reglamento Núm. 4844 del 16 de septiembre de 1992.

Según se dispone en el reglamento, las variaciones a ser concedidas son las variaciones en uso u otras variaciones. *Mun. de San Juan v. Bosque Real, S.E.,* 158 D.P.R. 743 (2003); *T-JAC, Inc. v. Caguas Centrum Limited Partnership,* 148 D.P.R. 70 (1999).

La variación en uso es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento de Zonificación en una zona o distrito y que sólo se concede, vía excepción, para evitar perjuicios a una propiedad cuando se demuestre que, debido a circunstancias extraordinarias, la aplicación estricta de esa reglamentación equivaldría a una confiscación de la propiedad. *Mun. de San Juan v. Bosque Real, S.E., supra; T-JAC, Inc. v. Caguas Centrum Limited Partnership, supra.*

Por su parte, cuando el Reglamento de Zonificación indica *"otras variaciones"*, se refiere a una variación que no va dirigida a alterar el uso, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el referido reglamento, para la zona donde radica el inmueble. *Mun. de San Juan v. Bosque Real, S.E., supra; Asoc. Res. Park Side, Inc. v. J.P. I,* 139 D.P.R. 349 (1995). Cuando se solicita este tipo de variación, la celebración de una vista pública tiene carácter discrecional. *Id.*

El Reglamento de Zonificación anterior, entiéndase el Reglamento Núm. 4844, establecía específicamente que la aprobación de una variación de uso requería la celebración de una vista pública. Por su parte, el reglamento vigente omite dicho requisito. No obstante, de la redacción de la Sección 82.04, entendemos que aún dicho requisito debe ser cumplido. El lenguaje utilizado en la referida sección sugiere la celebración de vistas públicas para la discusión de la aprobación de una variación de uso, las cuales además podrán incluir en la discusión más de una solicitud de variación. Ello continúa siendo obligatorio, puesto que como indicó el Tribunal Supremo hace varios años atrás, en *Asoc. Residentes Park Side v. JP,* 139 D.P.R. 349 (1995), *"la celebración de vistas públicas con respecto a una solicitud de variación es de particular importancia, pues sólo debe concederse variaciones en casos excepcionales en los que existe una justificación clara, y esto requiere hacer una balance de los distintos intereses envueltos".*

Por la naturaleza del interés público en la planificación urbana, las variaciones no se favorecen. Éstas deben concederse cuando concurran circunstancias extraordinarias y para evitar perjuicios a la propiedad. *"La Junta nunca debe aplicar con laxitud los requisitos para aprobar las variaciones porque ello socava la política pública de desarrollo ordenado latente en la legislación sobre planificación." Asoc. Res. Park Side, Inc. v. J.P. I, supra.*

En fin, mediante el mecanismo de la variación, se exime al titular de una propiedad de alguna de las restricciones establecidas por el Reglamento cuando se determina que, en su caso, la aplicación de la misma resultaría irrazonable. *Mun. de San Juan v. J.C.A.,* 152 D.P.R. 673 (2000); *Asoc. Res. Park Side, Inc. v. J.P.,* 149 D.P.R. 300 (1999); *Asoc. Res. Park Side, Inc. v. J.P.,* 139 D.P.R. 349 (1995).

## B. JACL

Se reafirmó en *Vélez Rodríguez v. ARPE,* Opinión del 21 de abril de 2006, **2006 J.T.S. 78**, que la JACL es un organismo administrativo de carácter cuasi judicial, el cual forma parte de un esquema administrativo integrado junto con la ARPE, encargado de aplicar y velar por el cumplimiento de las leyes y reglamentos de

planificación.

Esta junta *"fue envestida de jurisdicción apelativa para, entre otras, revisar las actuaciones, determinaciones o resoluciones de la ARPE con relación a permisos de construcción, uso de edificios y lotificaciones simples... El rol de la JACL es servir como organismo de apelación interagencial previo al trámite de un recurso de revisión judicial ante los tribunales." Id.*

Según ha explicado el Tribunal Supremo, la JACL no tiene autoridad discrecional en su competencia apelativa, sino que actúa con las mismas facultades y los mismos poderes que la ARPE, el organismo con jurisdicción original. *Id.* Ello se desprende del inciso (c) del Artículo 31 de la Ley Orgánica de la ARPE, 23 L. P.R.A. §72c(c)(3), que dispone que la JACL podrá decretar órdenes, requerimientos, resoluciones o las determinaciones que a su juicio deban dictarse y, a tal fin, tendrá los mismos poderes del funcionario y organismo de cuya actuación se apela.

La JACL, previo a adjudicar, deberá celebrar vista y, además, recibirá toda la prueba que resulte necesaria para adjudicar casos. 23 L.P.R.A. § 72c. Por tanto, la JACL no está limitada a revisar únicamente la prueba que consideró el funcionario con jurisdicción original en el asunto. *Vélez Rodríguez v. ARPE, supra; JP v. JACL,* 109 D.P.R. 210 (1979).

El Tribunal Supremo ha señalado que las disposiciones que permiten a organismos apelativos celebrar vistas, recibir prueba y hacer sus propias determinaciones, establecen en realidad facultades revisoras de la naturaleza de un juicio *de novo. Vélez Rodríguez v. ARPE, supra; Vélez v. Srio. de Instrucción,* 86 D.P.R. 755 (1962).

De esta forma, el ámbito de revisión de la JACL no está limitado por el principio de deferencia judicial. El que la JACL sea una agencia de carácter cuasi judicial no implica que esté obligada a darle deferencia a las determinaciones de hechos y conclusiones de la ARPE. Llegar a una conclusión contraria supone una abstracción irrazonable de las disposiciones legales que crean esta agencia apelativa administrativa y establecer sus facultades. *Id.*

Una vez agotado el proceso administrativo que incluye la apelación interagencial, la decisión final deberá revisarse judicialmente dentro de los parámetros del principio de deferencia judicial y su corolario, la presunción de regularidad y corrección de los procesos y decisiones administrativas. *Id. "Al igual que ARPE, JACL evalúa factores técnicos de gran complejidad... Por eso, los tribunales debemos revisar las decisiones de JACL, como organismo apelativo administrativo, de acuerdo a las normas derivadas del principio de deferencia". Id.*

## IV

### A. Doctrina de Cosa Juzgada e Impedimento Colateral

El Tribunal Supremo de Puerto Rico reiteró en *Municipio de San Juan v. Bosque Real, S.E.,* 158 D.P.R. 743 (2003), que la doctrina de cosa juzgada tiene su base estatutaria en el Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3343. De acuerdo con dicho artículo, para que se active la presunción de cosa juzgada, *"es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron... La doctrina está fundamentada en el interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial".* Por tanto, según lo expresó el Tribunal Supremo, *"[e]l efecto de la aplicación de esta doctrina es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de*

*acción y cosas, las controversias ya litigadas y adjudicadas y aquéllas que se pudieron haber litigado." Id.*

También se ha reconocido la figura jurídica del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada, en la cual no resulta necesaria la identidad de las causas. *Acevedo v. Western Digital Caribe, Inc.,* 140 D.P.R. 452 (1996); *A & P Gen. Contractors v. Asoc. Caná,* 110 D.P.R. 753 (1981).

Desde *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720 (1978), nuestro más Alto Foro resolvió la aplicación de la referida doctrina en el ámbito administrativo. Expresó que *"la aplicabilidad de la doctrina en el campo administrativo es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial". Id.*

Se ha establecido que en el campo del derecho administrativo, esta doctrina es aplicable en las siguientes vertientes: dentro de la misma agencia; interagencialmente, es decir, de una agencia a otra; y entre las agencias y los tribunales. *Id*; *Municipio de San Juan v. Bosque Real, S.E., supra.*

Ahora bien, es menester destacar que la aplicabilidad de esta doctrina no es automática y absoluta. En torno a ello, el Tribunal Supremo ha expresado que al considerar las excepciones para aplicar la doctrina de cosa juzgada en el contexto administrativo, *"[s]i la aplicación rigurosa de la doctrina derrotaría en la practica un derecho perneado en alguna forma del interés público, los tribunales se inclinan hacia la solución que garantice cumplida justicia, en lugar de favorecer de forma rígida una ficción de la ley que obedece fundamentalmente a un principio de conveniencia y orden procesal. En otras palabras, la regla no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso". Municipio de San Juan v. Bosque Real, S.E., supra; Banco de la Vivienda v. Carlo Ortiz,* 130 D.P.R. 730 (1992); *Pagán Hernández v. U.P.R., supra; Millán v. Caribe Motors Corp.,* 83 D.P.R. 494 (1961); *Pérez v. Bauzá,* 83 D.P.R. 220 (1961).

## V

La controversia medular de este caso versa sobre la aprobación de un permiso por la ARPE, luego de que la parte concesionaria lo solicitara en, al menos, ocho (8) ocasiones anteriores. En vista de ello, el caso presenta como polémica la posible aplicación de la doctrina de cosa juzgada e impedimento colateral. Además, se presentan como errores la no aplicación de la norma sobre autoinflicción de daños, la exclusión de prueba ofrecida por los recurrentes, la existencia de cláusulas restrictivas en la propiedad de la parte concesionaria y la ausencia de una visita ocular. Por estar intrínsecamente relacionados, discutiremos en conjunto los errores planteados.

Previo a cualquier análisis, es menester destacar que el escrito de los recurrentes contiene únicamente una discusión sucinta sobre el derecho aplicable a los errores planteados, sin entrar de lleno a los fundamentos de su solicitud de revisión. Como indicáramos en la discusión del derecho, la parte que impugne una determinación de una agencia administrativa deberá traer evidencia suficiente que derrote la presunción de corrección. De lo contrario, reconoceremos la deferencia establecida vía ley y jurisprudencia.

Arguyen los recurrentes que del tracto procesal de la situación de autos se desprende la aplicabilidad de la doctrina de cosa juzgada e impedimento colateral. Señalaron en su reconsideración ante la JACL que las solicitudes de permiso de la parte concesionaria fueron denegadas cuatro (4) veces por la ARPE, tres (3) por la JACL y dos (2) por el Municipio Autónomo de Guaynabo. Aparte de que existe la misma identidad de personas, ya que es la misma peticionaria, que existe identidad de la cosa, entiéndase la propiedad en controversia, y la misma identidad de causa, la cual es legalizar la construcción.

Por su parte, expone la parte concesionaria que el permiso concedido por la ARPE y reconocido por la JACL, se refiere a un anteproyecto nuevo. En consecuencia, no existe identidad de la cosa. El permiso autorizado se refiere a la modificación de los apartamentos de la segunda planta para convertirlos en unos de un

(1) dormitorio y a la apertura de la marquesina para ofrecer más estacionamiento. Cabe destacar que la determinación de la ARPE no incluyó la estructura accesoria ubicada en el patio posterior.

La doctrina de cosa juzgada fue reconocida en el ámbito administrativo. Al respecto, dispuso el Tribunal Supremo que su aplicación será flexible y dependerá de la naturaleza de la cuestión que se plantea. Será necesario que entre las determinaciones administrativas invocadas concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

Partiendo de lo antes descrito sobre la aplicación de esta doctrina, examinamos los documentos que obran en los expedientes de la ARPE. Ciertamente, la parte concesionaria solicitó en varias ocasiones la aprobación del mismo proyecto. No obstante, esta última vez propuso cambios a la construcción con el propósito de atemperarla a los requerimientos de esta agencia administrativa.

La ARPE celebró vista y tuvo ante sí la comparecencia de las partes y la del Municipio Autónomo de Guaynabo, quien específicamente solicitó la desestimación del anteproyecto por motivo de que dicha agencia había revocado el permiso originalmente otorgado porque la JACL desestimó el caso instado sobre el referido permiso y porque el Tribunal de Primera Instancia también dispuso del permiso. Señaló que la parte concesionaria actuó temerariamente al intentar la aprobación de un permiso de uso que no se consideraba aprobable por la magnitud de las violaciones envueltas y por la búsqueda de algún foro que aprobara la construcción.

Luego de haber recibido el insumo de los opositores y de la parte favorecedora al otorgamiento del permiso, la ARPE estimó razonable autorizar el anteproyecto que presentaba un panorama distinto al que originalmente fuera planteado por la parte concesionaria. Dispuso esta agencia que se autorizaba el proyecto vía variación a tenor con la Sección 98.00 del Reglamento de Zonificación con vigencia del 16 de septiembre de 1992, Sección 82.00 del actual reglamento. Esta decisión fue posteriormente confirmada por la JACL.

Analizada la solicitud del permiso en controversia, no identificamos la concurrencia de la totalidad de los factores establecidos en la doctrina de cosa juzgada para su aplicación. Veamos.

El permiso originalmente solicitado incluia: la construcción de una segunda planta distribuida en dos (2) apartamentos de dos (2) cuartos cada uno y una terraza; el cierre de la marquesina, la cual fue convertida en ampliación de la residencia de la primera planta; y un edificio accesorio en el patio trasero de la propiedad. En vista de que la construcción no cumplía con las distancias entre colindancias y por no haberse propuesto corrección a las violaciones identificadas por la agencia, la ARPE denegó en varias ocasiones la solicitud de permiso. Asimismo, la JACL confirmó las determinaciones de la referida agencia. Igualmente, el Municipio Autónomo de Guaynabo denegó la concesión de los permisos que le fueran solicitados por la parte concesionaria.

Ahora bien, la autorización de la ARPE se refiere a los apartamentos de la segunda planta, los cuales para reducir la densidad, serían remodelados a un (1) sólo dormitorio en cada uno. Además, se abriría la marquesina para ofrecer estacionamiento adicional. Se omitió la estructura accesoria que ubica en el patio posterior y de la cual desconocemos su utilidad. No obstante, esta última fue posteriormente incluida en la Resolución de la JACL. Resalta de lo antes descrito las diferencias existentes entre las solicitudes anteriores y la que finalmente fue aprobada. En virtud de ello, debemos concluir la falta de identidad de la cosa. Evidentemente, el permiso aprobado incluye propuestas nuevas con el propósito de conformar la construcción a las indicaciones de la ARPE. El permiso aprobado trajo otros elementos para la consideración de la agencia, por lo que el análisis que ésta realizó no podía ser igual al de las solicitudes anteriores.

Es menester destacar que surge de los hechos que luego de revocado el permiso aprobado inicialmente, la

parte concesionaria fue orientada por la agencia sobre las violaciones de las estructuras construidas en su propiedad. En consecuencia, la parte concesionaria estaba al tanto de las modificaciones que debía realizar en aras de que se le concediera el permiso. El que no haya presentado propuestas de modificación en las ocasiones anteriores no impedía que pasados los años acudiera ante la ARPE con una propuesta nueva. Además, no encontramos disposición reglamentaria que establezca un máximo de tiempo o de veces en que se podrá solicitar un permiso respecto a construcción en una propiedad.

Respecto a que la aprobación fuera vía variación, puntualizamos que ésta es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas a su zona o distrito por el Reglamento de Zonificación, y que sólo procede por excepción para evitar perjuicios cuando se demuestre que la aplicación estricta de esa reglamentación equivalga a una confiscación de la propiedad. En el presente caso, la ARPE, luego de estudiado el comportamiento en el sector, determinó que la comunidad aledaña a la propiedad se caracterizaba por construcciones similares a la realizada por la parte concesionaria. En virtud de ello, la variación no afectaría las características propias del distrito, ni tendría el efecto de convertir el distrito en otro. Además, la ARPE estimó que el uso particular de la propiedad no causaba perjuicio a las propiedades vecinas.

· Por su parte, la JACL, previo a resolver la apelación de la decisión de la ARPE instada por los recurrentes, celebró una vista administrativa a la que comparecieron todas las partes interesadas, con el fin de que cada una de ellas expusiera su posición sobre la aprobación del referido permiso. La Sra. Cynthia Vélez hizo exposición de los problemas que le ocasionaban los inquilinos de la parte concesionaria, la carencia de estacionamientos y destacó el hecho de que la estructura está justo pegada a su colindancia.

También compareció el representante de la Asociación de Residentes de la Urb. Muñoz Rivera, Inc., quien explicó que ésta fue organizada con el fin de atacar la proliferación de usos comerciales, casas multifamiliares y la construcción abusiva en la urbanización. Indicó la posibilidad de obstrucción en las aceras contiguas a la propiedad en controversia y expuso su oposición al proyecto, aun cuando la asociación había decidido. no intervenir con construcciones que llevaban mucho años de realizadas.

Es menester puntualizar que, según surge de la resolución de la JACL, en la vista celebrada, los recurrentes aceptaron que las fotos tomadas al frente de la propiedad en controversia y que fueran incluidas como parte de la evidencia sometida, no reflejan la realidad sobre el alegado problema de estacionamiento. Al estar la propiedad cerrada desde el año 2001, el representante de la Asociación de Residentes de la Urb. Muñoz Rivera, Inc. tomó las fotos estacionando sus vehículos y el de su abogado con el fin de ilustrar el problema que pudiere existir si los apartamentos fueren finalmente alquilados.

Por la parte concesionaria, testificó su perito, el Ing. Ramón Maíz del Toro. Éste explicó sobre la construcción y demostró con fotos la existencia de un sinnúmero de residencias similares a la de ésta en la misma urbanización. Señaló que las variaciones autorizadas presentaban algunos ajustes a las inconformidades reglamentarias. Finalmente, opinó que la reglamentación y la realidad social de Puerto Rico favorecen la densificación y la construcción de segundas plantas con el fin de satisfacer las necesidades existentes en materia de vivienda.

Igualmente, testificaron algunos vecinos inmediatos que estaban a favor de la concesión del permiso. Explicaron la no existencia de problemas de tránsito o estacionamiento. No obstante, señalaron la incomodidad que representaba el carretón que la Sra. Cynthia Vélez tenía estacionado en frente de su casa por varios años. Destacaron no haber visto desórdenes en la propiedad de la parte concesionaria ni problemas de tránsito.

Por último, previo a expresar su determinación final, la JACL hizo un señalamiento respecto a la presentación de una oferta de prueba adicional que no fue objeto de la conferencia con antelación a vista por parte de los recurrentes. La JACL declaró no ha lugar dicha prueba por haberse solicitado su admisión luego de

que el caso hubiese quedado sometido.

Como resultado del análisis de todas las exposiciones y de la evidencia que fuera sometida, la JACL resolvió confirmar la determinación de la ARPE. Fundamentó su decisión en la Sección 9 del Reglamento de Ordenación del Municipio de Guaynabo que establece los usos permitidos en los distritos R-3 y en la Sección 65 del mismo reglamento, la cual trata las variaciones. Consideró la JACL que los recurrentes no lograron derrotar la presunción de corrección de la decisión apelada. Las variaciones aprobadas fueron justificadas y cumplían con los requisitos reglamentarios.

La ARPE es la agencia con el peritaje necesario para adjudicar solicitudes de permisos que requieran variaciones en uso. Surge de los expedientes de esta agencia, que en observancia con su deber de velar por el cumplimiento de las leyes y reglamentos de planificación, en todas las ocasiones que tuvo ante sí una solicitud de permiso de la propiedad en controversia realizó inspecciones del área, identificó las violaciones, se comunicó con la parte concesionaria, tramitó querellas y dio oportunidad a que los opositores se expresaran.

Igualmente, la JACL, al no estar limitada a revisar únicamente la prueba que consideró el funcionario con jurisdicción original, recibió prueba adicional y conforme a su reglamento celebró vista, en la que personalmente recibió las variadas opiniones de las partes.

Este Tribunal, en su función revisora, está limitado a revisar la razonabilidad de la determinación impugnada, si éstas actuaron ilegalmente o si erraron en la aplicación del derecho. Examinados detenidamente los escritos ante nuestra consideración, sus apéndices y los expedientes originales de la ARPE, no encontramos motivo que justifique nuestra intervención con la última decisión. Los recurrentes no pusieron a este Tribunal en posición de determinar que, en efecto, los errores planteados fueron cometidos.

Destacamos que los recurrentes no demostraron la pertinencia de la prueba adicional ni del Informe del Ombudsman que pretendían presentar. Aparentemente, según pudimos verificar en los documentos contenidos en los expedientes de la ARPE, pasado el turno de exposición de los recurrentes, éstos solicitaron la admisión de cierta evidencia y del referido informe. No obstante, ésta fue rechazada. Luego, mediante moción de reconsideración, solicitaron nuevamente su admisión. Destacamos que desconocemos cuál y de qué se trataba dicha evidencia. No encontramos escrito que desglosara la evidencia que se pretendía presentar y que expusiera su pertinencia.

En torno al planteamiento de error sobre la no celebración de una inspección ocular al lugar, no surge de los expedientes que fuera solicitada por alguna de las partes, salvo una breve mención que se hiciera en el *Informe sobre Conferencia Preliminar entre Abogados*. Además, su realización es prerrogativa de la JACL, quien entendió suficiente descansar en la evidencia que le fue presentada y en la presunción de corrección de la determinación de la ARPE.

En último lugar, los errores planteados en torno a la existencia de condiciones restrictivas y la aplicación de la norma sobre autoinflicción de daños no fueron detalladamente explicados ni sustentados. Como indicáramos en el inicio de este análisis, los recurrentes se limitaron a mencionar los errores y a indicar brevemente el derecho y jurisprudencia aplicable. Al no discutir los errores, los recurrentes no identificaron a este Foro las alegadas condiciones restrictivas, la manera en que éstas específicamente fueron violadas y la aplicación específica a los hechos de autos de la referida norma de autoinflicción de daños. Por lo tanto, desconocemos en qué éstos se basan para alegar dichos errores.

Una mera alegación de error que incluya algún derecho y jurisprudencia no es suficiente para derrotar la presunción de corrección y deferencia. Para que este Tribunal se incline a intervenir con una determinación administrativa, la parte que la impugne deberá explicar e identificar los hechos, la evidencia y los fundamentos.

141

Es la parte que recurra de la determinación quien debe traer la información completa y no este Tribunal quien deba verificar entre documentos que presentaron ante la agencia administrativa las razones y fundamentos en que basan sus planteamientos de error.

En fin, en virtud de lo antes explicado, resolvemos confirmar la determinación de la JACL que a su vez confirma la aprobación que emitiera la ARPE al anteproyecto presentado por la parte concesionaria en torno a la apertura de la marquesina y la conversión de los apartamentos a un (1) dormitorio cada uno y que la modifica a los efectos de incluir la eliminación de parte de la ampliación en el patio posterior para que el edificio accesorio cumpla con la distancia reglamentaria de retiro del edificio principal.

## VI

Por los fundamentos expuestos anteriormente, confirmamos la determinación de la JACL aquí impugnada, la cual modifica la autorización de la ARPE para incluir una determinación sobre el edificio accesorio.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones